Our fifth case is the United States v. Manuela Chavez, No. 2014-65. Mr. Madden, good morning. We'll begin with you. Good morning. Thank you. May it please the Court, Matthew J. Madden for the appellants. Manuela Chavez's conviction in this case was an ill-gotten conviction. It is a conviction that this Court should not have confidence in, and this Court should not allow it to stand. The integrity of the conviction is undermined by several factors, most notably a succession of improper statements and arguments to the jury in the prosecutor's rebuttal. In their rebuttal, the government repeatedly and improperly made statements vouching for and bolstering the credibility of their informant, Willie Slater, and that's where I would like to start my argument. Mr. Madden, can I ask you one question? It's unclear. You make arguments regarding the prosecutor's position that Mr. Slater would go to prison for the rest of his life, and the prosecutor repeated this one, two, three, four times in a short succession that if plea agreement's gone, poof, and he's in prison for the rest of his life. I have two questions for you. Number one, was that in rebuttal or was that in the regular closing argument, number one? And number two, where did that come from? Did Mr. Slater testify on direct examination or cross-examination that he believed he would go to prison for the rest of his life in the event that he lied on the witness stand? Judge, to the first question, it was in rebuttal. To the second question, he did not testify that he believed he was going to go to jail for the rest of his life. And Judge, I wasn't going to start there, but now that we're there, I'm happy to address that. The actual, you're right, I believe it was said four times in the rebuttal. And one of them, kind of the highlight one from my perspective, the prosecutor told the jury that if Slater got on the witness stand and lied, quote, yoink, the plea agreement is gone, he's in jail for the rest of his life, unquote. There are multiple problems with this statement. The prosecutor obviously did not yoink, to use that term, the plea agreement. So the only conclusion for the jury to draw is that the prosecutor believes Slater is telling the truth. It was like a personal stamp of approval from the prosecutor that I, my office believes him, and you should too. He essentially inserted himself into the situation as the arbiter of Slater's credibility, and that is improper bolstering. Now, as to more directly to what the court asked about, in their response, you know, the government said, well, the government said in their response that the argument was not that the government would pull the plea agreement, but Slater understood that if he lied, he faced increased penalties. Well, I would respond to that and say the argument, if it wasn't that he wasn't going to pull the plea agreement, what does yoink mean? I mean, yoink is like the cartoon sound of a pulling of a plea agreement. Of course, that's what the argument was. And the second problem that was referenced by the court is that if he lies, he isn't prison for the rest of his life. And that's the quote, he isn't prison for the rest of his life. As a matter of law, a life sentence was impossible. As the conviction had a 40 year max on it, making the statement just on its face inaccurate. His guidelines were 30 years to life. And I'm not downplaying in any way, your honors, that the seriousness of a sentence possibly of 30 to 40 years. However, the prosecutor apparently thought it was necessary to exaggerate it into a life sentence. And he didn't say it once. He didn't say it twice. He said it at least four times. So again, not only is this statement improper vouching for Slater's credibility, his plea agreement was not pulled. So he must've been truthful. It's by definition, an inaccurate statement to the jury. Every time it was said, your honors, the next statement I'd like to highlight is quote, he being Slater. He consistently told the government that Chavez distributed narcotics to him on multiple occasions. That's a fact unquote. Again, your honors, this statement sort of runs the gamut of a few problems addressed in the brief. First and foremost, it is pure vouching for the credibility of the witness in an attempt to bolster Slater's credibility through the implication to the jury. The implication is listen, he always told us the same thing. Now you didn't necessarily hear about it from any witness because they didn't, it was behind closed doors in my office or wherever it was, but I'm telling you, he was always consistent with us. And he punctuated with that's a fact. Well, as the seventh circuit, as many times said, improper witness vouching occurs when a prosecutor relies on facts, not before the jury to lend credibility to the witness, the prosecutor, assuring the jury that he consistently told us the government, the same story is improper vouching based on information, not in the record. There was no witness who testified about Slater's consistency in his story to government agents or to government prosecutors. In fact, the opposite is true, which brings us to the second problem of that exact same statement. It grossly misstates the evidence. It's not accurate. The prosecutor put an exclamation point on it with that's a fact, but actually it's not a fact. Initially when the government went with Slater about the drug activities at Roma three, he never mentioned Ms. Chavez as part of the press operation. So in addition to improper vouching, that statement also misstates that Slater was always consistent on that point when they knew very well, he was not consistent on that point. And throughout the argument over and over again, the prosecutor told the jury that Slater was consistent about a whole host of subjects that the record shows he was not consistent about. Mr. Madden. Yes. I don't want to interrupt your thought. Let me just put this question out there and you can respond to it when you choose. I think he makes some fine observations about improper statements. And I think you've done a good job representing your client here. Question I have, what's the standard of review? Not every one of these things were objected to as I think you've acknowledged. And so some were to be sure, others were not. But you're not asking us as I hear your argument and as I read your brief, you can correct me if I'm mistaken, to focus on this one or that one and to reverse on that basis alone. You're coming in and you're saying, look, in the government summation, maybe principally in the rebuttal, the assistant clearly stepped over the line several times here that had a big impact on my client getting convicted. What standard of review do we employ? Well, judge, I'm glad you asked that. I think it's different. We've so far talked about two specific statements, which I think kind of represent certainly the kind of captures what was happening. And two of the most egregious, the one that I just talked about, judge, and I'll go back to it just so we're clear consistently told the government that Chavez distributed narcotics to him on multiple occasions, which I maintain is bolstering that was objected to. So I think that the review there is DeNovo. The original one that we talked about, which was about the plea agreement that was not objected to. So I believe on that, that statement, it would be plainer that, that said there was. So how do we do that? How do we do that? Where some are for plain air, others are DeNovo, but as you're arguing, it's the totality of it all, you know, and you, I think you objected to the harsh criticism of defense council. I did judge. So I think, I think specifically the two, there was two objections. So I think those two probably need to be separated to some degree because they were specifically objected to. And judge, I, I, not, I would like to just briefly before I get into my time, the comments regarding defense attorneys, you know, throughout the rebuttal, there was this sort of building criticism of defense attorneys, like, you know, that's something defense attorneys do. And that happened four or five times. It reached this crescendo with quote, let's talk about things that matter, not the little details, the distinctions without a difference that defense attorneys make their living on. At which point there was an objection judge. I don't know how that statement can be interpreted as anything other than an attack on the integrity of defense attorneys across the board. It was an attempt to undermine everything we had done during the trial and every word of our argument. And it suggested that the motivation for the argument was money, not justice. And that is offensive to the system as a whole. And I think that line of improper argument and an attack on the entire integrity of the entire portion of the federal bar, that's a door that this court should not leave open even a crack. I think it should slam it very shut very loudly with the opinion in this case. But judge said, briefly answer your question. I think those two statements need to be considered a little bit separately because there was a specific objection. Okay. Very well. We'll give you a couple minutes for rebuttal. Mr. Fullerton, let's turn to you now. Yes. Good morning. May it please the court. The district court correctly denied that the post trial motion for a new trial. This was a vigorous argument, no question about it. And council, you know, the prosecutor made a strong rebuttal, Mr. Fullerton, what, what do you make of Mr. Madden's argument that the prosecutor argues that the defendant is telling the truth? And the reason the government knows that is if he was not, I don't know who tried the case. I just say, she or he pulled the plea agreement. And since the plea agreement was right there and Mr. Slater testified, he was still subject to the plea agreement. What do you make of his argument that the jury should conclude from that, that the prosecutor believes him or that it is improper bolstering that that's the, the concern I have is in your brief on page 31 and 30, you have a long block quote where the prosecutor repeatedly says he'll go to jail for the rest of his life. And I, I don't know where that comes from. It's not an evidence, but anyway, the argument was made and then yoink the plea agreement is gone. And then on page the bottom of page 31 and 32 of the brief, you say, well, the government's not arguing that it would pull the plea agreement, which is I read, but that Slater understood that if he lied, he faced severely increased penalties. But that's strikes me as when you say the plea agreement is gone, that means there is no plea agreement, at least to me, which by the way could happen, right? I read the plea agreement and the plea agreement is clearly in the back of the plea agreement. The stock language is there. If you breach the plea agreement, we can move to withdraw it. Right. I think the basic thrust of that argument and the context for it was to discuss the incentives that Slater had to tell the truth. Now that's a proper argument for the government to make a rebuttal that the incentives provided by Slater's plea agreement were aligned with him being truthful. And to further discuss that incentive, the prosecutor discussed this point from Slater's point of view, namely what incentive did he have to lie? If he tells the truth, he has the plea. If he lies, he faces increased penalties. Slater had testified that he understood the guideline range was 30 to life. So from Slater's point of view he understood that if he lied, he would be without a plea agreement, would be facing a possible sentence of life in prison. It was from his point of view, not that I assure you, ladies and gentlemen, we would pull his plea agreement, but rather Slater understood that that was a consequence of lying. As for the other point that Mr. Madden makes this morning regarding the consistency that Slater had exhibited throughout, this was a, you know, the cross-examination of Slater can really focus on his prior inconsistent statements or prior failure to, or inconsistent statements, basically that Slater had initially stated that he got drugs from Chavez from four to five times, but that when he testified, he had said it was from four to seven times. His grand jury testimony, I think was from the four to five number, but his trial testimony was from four to seven and much was made of that inconsistency. And in rebuttal, the argument was look, Slater was consistent in naming Chavez as having distributed drugs to him on multiple occasions. He's been consistent throughout. That's, that was a fact. There was inconsistency from four to five and from four to seven, but as the government pointed out, you know, Slater was not taking contemporaneous notes while he was dealing with Manuela Chavez and Rosie Perez. He was a drug dealer. He had all the failings that human memories have, and he was trying to be truthful. So yes, there was a minor inconsistency, but the major consistency, the one that mattered, that the government emphasized was that he had been consistent in naming Chavez as having distributed drugs to him. That was the, and that was the thrust of the argument regarding, you know, these defense tactics. It was permissible for the prosecutor to argue that, you know, to criticize a defense tactic, which was to focus on the trees rather than the forest. And what the government was trying to do by criticizing this defense tactic of quote, parsing words, unquote, was to remind the jury that their job was to not to lose sight of the forest for the trees, not to get caught up in whether it was exactly four to five or exactly four to seven. But the basic thrust of it was he had named Chavez as being the source of drugs for him on prior occasions. And that was corroborated by the evidence on video. Mr. Fullerton, speaking to that point, the government, you're quite right. I believe has the opportunity and was correct to say he can't tell you the exact number because he's not a professional witness. I think that's okay. He's not a polished guy. I think that's okay. He's not a tape recorder. I think that's okay. Right. But then here's the voucher. He is someone who's doing his best to tell you the truth. If that doesn't cross the chalk line, it certainly get, you know, get some dust on your shoes. I mean, that's a pretty direct. I can see where you're coming from. I would point out a couple of things. One is the prosecutor does not say, I believe he's trying to do his best to tell the truth. He's saying it's understood. He's saying you, the jury should understand that he's trying his best to tell the truth. That's one that he's not expressing your personal opinion about Slater's credibility. The second thing I would point out is there was testimony on redirect of Willie Slater having been cross-examined on, you know, a number of inconsistencies in his, in cross-examination. There was redirect testimony from Slater that he was trying to do his best to tell the truth. So that was in evidence and for the prosecutor to remind the jury of that was not, it was of course not improper. Can I ask you a question similar to judge Floms and let me put it this way. I guess my reaction to your argument is it's proceeding in a bit of a, of a higher level of generality than I think it should. Or it needs to. There's no, there's, there's absolutely no question at the generality you're discussing that the jury has been arguing that evidence is materially consistent, that it's corroborated. Everyone can quickly agree, but don't, how about the comment about defense lawyers making their living on emphasizing distinctions without a difference? I mean, I think in your brief you say it's unfortunate wording or inartful language or something. I mean, my word. Right. Well, okay. I'm not trying to defend that comment as being entirely proper. I was objected to the objection was sustained. The prosecutor moved on, didn't return to that line of argument. And you know, in the bottom line here, your honor, or backed up argument is that even if you were to take this handful of allegedly improper statements, there was no prejudice to Manuela Chavez. The evidence against her was extremely strong. She was on video having handed a kilogram of heroin to Willie Slater. Now the argument of course was not that it wasn't her or anything, but that she didn't know, but she had to know from these circumstances and that's exhibited by the evidence. This kilogram of heroin was worth $60,000. She knew exactly what to do when she got back to the rear office with Willie Slater. There was no question like, what are we doing here? Or what do you want? Nothing like that. It was, her behavior was entirely consistent with being a knowing participant in this conspiracy with her aunt, Rosie Perez. And so, even if you were to redact from the rebuttal argument, the allegedly improper arguments, she still would have been convicted. And I think that's, goes to the, you know, the standard of review, for the arguments that were not preserved or the objections that were not preserved and goes to the, to the ones that were preserved as well. So we ask that you affirm the conviction of Manuela Chavez. If you have any other questions, we'd be happy to address them. But other than that, we ask you to affirm. Okay. Very well. Thank you, Mr. Fullerton. We'll give you a couple of, we'll give you two minutes on rebuttal. We went a little bit over, we've asked a lot of questions, so go ahead. Thank you, judge. I would like to address the last point that the government made first as to the other evidence, you know, many improper argument instances that come before this court can be alleviated because the strength of the other evidence of the case. This is not one of those cases. The government evidence was not quote, extremely strong as the, as the government has put it, particularly asked the knowledge element. They could not have gotten a conviction beyond a reasonable doubt without rehabilitating Slater's credibility, the August 28th video standing alone. And that's where the evidence is absent Slater's credibility. Does not meet the standard of proof required in drug distribution and drug conspiracy cases in this district. She is on no other surveillance associated with the case. She participated in no other recorded transactions with Slater. The video of her handing over the package is not enough to prove her knowledge. And as I did not reply in the United States versus Garcia, the seventh circuit States that quote evidence that calls for inferences focused on a defendant's presence or association with criminals or the criminal activity will fail to carry the government's burden. Unquote. That's what we've got here without the government's improper bolstering of Slater's credibility. The government case is reduced to inferences focused on defendants association with criminal activity, which according to Garcia will vary, fail to carry the government's burden without Slater's credibility as to knowledge. This was all about knowledge. The whole case was about knowledge. The government could not satisfy that required element without those improper arguments. Your Honor is the improper arguments by the government were serious. They were sustained throughout the entire rebuttal. This court should not result in harmless error finding because it was not harmless. And it's also a mess. A message needs to be sent that this is not the proper way to obtain convictions with overzealous over the line arguments in rebuttal. Ms. Chavez was denied a fair trial and the case should be reversed on that basis. Thank you. Thanks to both parties. The case will be taken under advisement. The court's going to take a short recess for five minutes. Reconvene the panel and we'll proceed to our sixth and final case of the morning.